The Law Firm of Richard M. Baron
300-3 Route 17 South, Suite 6
Lodi, NJ 07644-3831
(973) 473-5200
fax (973) 473-5250
Counsel for Defendants,
        Gosline-Nissen Fire Protection, L.L.C.
        and D & K Gypsum Floors, Inc.
Richard M. Baron, Esq. (RMB/8157)



**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **In the Matter of:** | **CHAPTER 11 PROCEEDING** |
| **KARA HOMES, INC., et al.,** | **CASE NO. 06-19626 (MBK)** |
| **Debtor.** | |
| **KARA HOMES INC. AND THE LANDINGS AT MANAHAWKIN, LLC,** | |
| **Plaintiffs,** | **ADV. PROCEEDING NO. 07-1058** |
| v. | |
| **CENTURY KITCHENS, INC.; THE ESPOSITO GROUP, LLC; DUBELL LUMBER COMPANY; UNIVERSAL FORREST PRODUCTS EASTERN DIVISION, INC.; GOSLINE-NISSEN FIRE PROTECTION, LLC; D & K GYPSUM FLOORS, INC.; MAC ELECTRICAL CONTRACTORS, INC.; UNITED RENTALS NORTH AMERICA, INC.; VINTAGE CONTRACTING OF N.J., INC.; A.W. MEYER CO., INC.,** | **SECOND CERTIFICATION OF RICHARD M. BARON** |
| **Defendants.** | |

I, Richard M. Baron, do hereby certify the following:

1.      I am an attorney and counsel for Defendants, Gosline-Nissen Fire Protection, LLC and D & K Gypsum Floors, Inc. (collectively "Defendants"). I submit this Certification as part of Defendants' opposition to the motion for summary judgment brought by Plaintiffs, and I am familiar with the facts set forth herein.

2.      I have special knowledge regarding the legislative history and intent behind the Construction Lien Law, in general, and its residential sections, in particular. As a result, Defendants agree with Plaintiffs that the construction project known as "The Landings at Manhawkin" ("Project") which is the subject of this action should be considered as "residential" within the Construction Lien Law.

3.      I was one of the actual drafters of the Construction Lien Law. Moreover, I personally wrote and negotiated the terms of most of the sections which are now at issue. Thus, I do have direct knowledge of legislative intent.

4.      The Construction Lien Law was passed by acclamation of the New Jersey State Legislature. What was proposed, and later enacted, had been jointly submitted by various industry trade groups involved with the real estate and construction process. These included commercial developers, residential developers, title insurance companies, lenders and the construction industry. For the construction industry, a "coalition" of the various trade groups was formed in order to jointly represent general contractors, subcontractors, suppliers and design professionals under an umbrella group called the "Construction Congress of New Jersey." The Building Contractors Association of New Jersey led this coalition, and Robert S. Peckar, Esq. was its general counsel. He was the motivating force behind the Construction Lien Law, with assistance from Edward Callahan, Jr. (who was general counsel for this region of the National

2

Electrical Contractors Association).  As the drafting and negotiations were finally moving towards fruition, I functioned as their "right-hand man".

5.      A reference to my own involvement can be gleaned from the annexed copy of a draft of the agreed residential construction lien law sections. See Exhibit "A". This was inserted into one of the last draft rounds before the law was enacted.  You will also find my name in the Acknowledgment in the construction law book by Mr. Peckar.  See R. Peckar, 41 New Jersey Practice, CONSTRUCTION LAW,  p. XVI (West 1998).  Later, I wrote about seventy-five percent of the ICLE seminar book on the subject.  See Craft v. Stevenson Lumber Yard, Inc., 179 N.J. 56, 71 (2004) citing with approval R. Peckar, R. Baron & E. Callahan, Jr. NEW JERSEY'S NEW CONSTRUCTION LIEN LAW:  A PRACTICAL GUIDE TO THE NEW LAW WITH FORMS (ICLE 1994)[1].

6.      I had several substantive roles. The last major piece of this legislation which required agreement governed residential construction. I personally negotiated the requirements in the law governing residential construction with counsel selected by the New Jersey Builder's Association. I also wrote drafts of almost all the residential sections of the Construction Lien Law, including what became Subsections 21(b) (but not (a)), Section 18, and part of Section 19. In a second role, I helped create a unified piece of legislation which was acceptable to the various interest groups. Since drafting had been ongoing for years, the ideas reflected in the various pieces did not fit together very well. With the basic concepts set in the drafts, I was responsible for evaluating the various scenarios which might be impacted by its draft provisions; seeing how they would interplay; finding gaps, inconsistencies and ambiguities in the various drafts; and then obtaining final agreements among the groups to modify the language, where possible, and to eliminate them. There is very little in this statute which did not include at least some of my handiwork.

---

[1] The sections in Mr. Peckar's book involving the Construction Lien Law borrow heavily from the ICLE material.

7.      The principal drafters were aware of a number of ambiguities in the law before enactment, but, we were not always able to reach a consensus to eliminate them. Competing interests by different groups could not always be fully reconciled. Nonetheless, the advantages of passing a new law were greater than a permanent stalemate. The sections of the Construction Lien Law which differentiate residential and non-residential construction were one of those areas.

8.      For those involved in the negotiations and finalization of these sections, there was recognition that a typical multi-family development would be governed by the residential sections of the Construction Lien Law.  This can be clearly seen by the inclusion of Section 18 and Section 19(a) where residential units are under consideration. Section 18 does not make logical sense unless some multi-family developments are included. Likewise, note the absence of any language like the word "solely" in the definition of "residential construction contract" as compared to Section 19(a).

9.      But, not every building project with a "residential flavor" necessarily falls within the scope of the residential sections of the Construction Lien Law. If the language were too broad, non-residential projects could be engulfed by the restrictions affecting residential property. One which should not be covered, for example, is a piece of property which a developer is having cleared but for which the developer has not yet obtained permission to subdivide into residential units.

10.     To my knowledge, the Project's recorded property instruments include a filed master deed with units having allocated common elements. Cf. N.J.S.A. 2A:44A-18. Since this information would be available to the public through a title search, contractors who performed work on the Project should have record notice of its residential nature.

4

I hereby certify that the foregoing statements made by me are true.  I am aware that if any

of the foregoing are willfully false, then I am subject to punishment.

Dated: 6/2d/07

THE LAW FIRM OF RICHARD M. BARON
Counsel for Defendants, Gosline-Nissen Fire
Protection, L.L.C. and D & K Gypsum Floors,
Inc.

By: _____
            Richard M. Baron, Esq.

5

# EXHIBIT "A"

# PECKAR & ABRAMSON
A Professional Corporation

| | |
|---|---|
| 70 GRAND AVENUE<br>RIVER EDGE, N.J. 07661<br>(201) 343-3434<br>FAX: (201) 343-6306 | 120 WEST 45TH STREET<br>NEW YORK, N.Y. 10036<br>(212) 382-0909<br>FAX: (212) 382-3456 |

| | | |
|---|---|---|
| ROBERT S. PECKAR | RICHARD M. BARON✦ | SAMANTHA G. REISS° |
| RICHARD L. ABRAMSON | ANTHONY J. BELKOWSKI | JEFFREY P. ROSENSTEIN |
| BRUCE D. MELLER | GINA A. CALOGERO | CAROLINE M. ROSSI |
| ROBERT A. DRUCKER | STEVEN M. CHARNEY | ADAM M. SCHNEIDER✦ |
| KEVIN D. SLAKAS | STEVEN COHEN | BRUCE M. STEPHAN |
| ROBERT HEDINGER* | PATRICK J. GREENE, JR. | ERIC C. STUART° |
| CHARLES F. KENNY | MARGARET C. LONG | LEE M. TESSER |
| ROBERT T. LAWLESS | GERARD J. ONORATA | PRISCILLA J. TRIOLO |
| EUGENE J. SULLIVAN* | | RICHARD E. WENGER |
| DAVID LEW | | |

\* *Admitted Also to Pennsylvania Bar*
✦ *Admitted Also to Florida Bar*
° *Admitted to NY Bar Only*

June 16, 1993

FAX  201 697-2426

Joseph Riggs
President
New Jersey Builders Association
c/o Swedeland Forge
Schoolhouse Road
Oak Ridge, NJ 07438

Re:  New Jersey Construction Lien Law

Dear Joe:

I just returned from a trip to Asia to receive very good news.  I was advised by my associate, Rick Baron, that the joint efforts by your Association and the Lien Law Coalition to resolve a single, acceptable, complete draft of the new lien law had been successful.  The result of that successful effort is attached to this letter as "Amendments to Mechanics Lien Law, June 16, 1993."

I called Peter Reinhart to double check that we had achieved consensus.  He confirmed that fact to me and approved my writing this letter to you so that there will be a document reflecting the achievement of our mutual success.

I wish to express my personal gratification to Peter, Kerry, you and Carol Ann and all the other members of your organization for your cooperation and sincerity.  I know that the other members of the Coalition, most notably our esteemed colleague Ed Callahan, share in that appreciation.

Inasmuch as the matter is to be placed before the Senate within the next few days, I am faxing a copy of this letter to Senator Sinagra.

Very truly yours,

ROBERT S. PECKAR

RSP/ban
Attachment
letters\riggs.616
cc:     Senator Jack Sinagra
        New Jersey Builders Association

# AMENDMENTS TO MECHANICS LIEN LAW

## June 16, 1993

1. Amend section 2 to revise the definition of residential construction contract to read as follows:  "Residential Construction Contract" shall mean any written contract for the construction and/or improvement to a one or two-family dwelling, or any portion of the dwelling which shall include any unit in a residential condominium subject to the provisions of N.J.S.A. 46:8B-1, et. seq., any unit in a residential housing cooperative, any residential unit contained in a fee simple townhouse development and any unit contained in a Planned Unit Development as described in N.J.S.A. 40:55D-1 et seq. of the Municipal Land Use Law.

Further amend section 2 in order to add a new definition of Residential Purchase Agreement to read as follows:  "Residential Purchase Agreement" means a written contract between a buyer and a seller for the purchase of a one or two-family dwelling, any unit in a residential condominium subject to the provisions of N.J.S.A. 46:8B-1, et. seq., any unit in a residential housing cooperative, any residential unit contained in a fee simple townhouse development, any unit contained in a Horizontal Property Regime as defined in N.J.S.A. 46:8A-1 et. seq., and any unit contained in a Planned Unit Development as defined in N.J.S.A. 40:55D-1 et. seq. of the Municipal Land Use Law.

2. Amend Paragraph 21 to change all references from "Notice of Unpaid Balance" to "Notice of Unpaid Balance and Right to File Lien."  Also amend the bill's other references to a Notice of Unpaid

Balance.   Also amend Paragraph 21(a), in the actual form of Notice of Unpaid Balance and Right to File Lien to add a new item 6 to read as follows:   "The written contract is (is not) (cross out inapplicable portion) a residential construction contract as defined in section 2 of this act."   Then change old item number 6 to number 7.

      3.   Add the following as subsection 5(c):

      (c)   For work, services, material or equipment furnished pursuant to a Residential Construction Contract unless there is strict compliance with sections 21 and 22 of this act.

      4.   In section 6, line 7, after "... of this act," add:   "and in the case of a Residential Construction Contract, compliance with sections 21 and 22 of this act".

      5.   In section 10, line 11, change "section 15" to "sections 15 and 22".

## Add the Following Section as Paragraph 22 and Renumber the following sections

      22.  The Legislature finds that the ability to sell and purchase residential housing is essential for the preservation and enhancement of the economy of the State of New Jersey and that while there exists a need to provide contractors, subcontractors and suppliers with statutory benefits to enhance the collection of money for goods, services and materials provided for the construction or residential housing in the State of New Jersey, the ability to have a

-2-

4842K/061193

stable market place in which families can acquire homes without undue delay and uncertainty and the corresponding need of lending institutions in the State of New Jersey to conduct their business in a stable environment and to lend money for the purchase and/or finance of home construction and/or renovations requires that certain statutory provisions as related to the lien benefits accorded to contractors, subcontractors and suppliers be modified.  The Legislature further finds that the construction of residential housing generally involves numerous subcontractors and suppliers to complete one unit of housing and that the multiplicity of lien claims and potential for minor monetary disputes poses a serious impediment to the ability to transfer title to residential real estate expeditiously.  The Legislature further finds that the purchase of a home is generally one of the largest expenditures that a family or person will make and that there a a multitude of other state and federal statutes and regulations, including the Builder Registration and New Home Warranty and Planned Real Estate Development Full Disclosure Acts which afford protection to consumers in the purchase and finance of their homes, thereby necessitating a different tretment of residential real estate as it relates to the rights of contractors, suppliers and subcontractors to place liens on residential real estate.  The Legislature declares that separate provisions concerning residential construction will provide a system for balancing the competing interests of protecting consumers in the purchase of homes and the contract rights of contractors, suppliers

-3-

4842K/061193

and subcontractors to obtain payment for goods and services provided.  X

The filing of a lien for work, services, material or equipment furnished pursuant to a residential construction contract shall be subject to the following additional requirements:

(a) As a condition precedent to the filing of any lien arising under a residential construction contract, a lien claimant shall first file a Notice of Unpaid Balance and Right to File Lien in accordance with the provisions of section 21(a), and comply with all other provisions of this section.

(b) Upon the filing of said Notice of Unpaid Balance and Right to File Lien, service of the Notice of Unpaid Balance and Right to File Lien shall be effected in accordance with the provisions of section 7 of this act.

(c) Unless the parties have otherwise agreed in writing to an alternative dispute resolution mechanism, then simultaneously with the service under paragraph (b) of this section, the lien claimant shall also serve a demand for arbitration and fulfill all the requirements and procedures of the American Arbitration Association to institute an expedited proceeding before a single arbitrator designated by the American Arbitration Association.

(d) Upon the closing of all hearings in the arbitration,

-4-

the arbitrator shall make the following determination: (i) whether the Notice of Unpaid Balance and Right to File Lien was in compliance with section 21 of this act and whether service was proper under section 7 of this act; (ii) the validity and amount of any lien claim which may be filed pursuant to the Notice of Unpaid Balance and Right to File Lien; (iii) the validity and amount of any liquidated or unliquidated setoffs or counterclaims to any lien claim which may be filed; and (iv) the allocation of costs of the arbitration among the parties.

(e) In the event the amount of any setoffs or counterclaims presented in the arbitration are unliquidated and cannot be determined by the arbitrator in a liquidated amount, the arbitrator, as a condition precedent to the filing of the lien claim, shall order the lien claimant to post a bond, letter of credit or funds with a licensed title insurance company, an attorney-at-law of New Jersey, or other such person or entity as may be ordered by the arbitrator in such amount as the arbitrator shall determine to be 110% of the approximate fair and reasonable value of such setoffs or counterclaims, but in no event shall the bond, letter of credit or funds exceed the amount of the lien claim which may be

-5-

4842K/061193

filed.  The aforesaid 110% limitation regarding any bond, letter of credit or funds shall also apply to any alternative dispute resolution mechanism to which the parties might agree.

(f) The arbitrator shall make such determinations set forth in subsections (d) and (e) within thirty (30) days of receipt of the lien claimant's demand for arbitration by the American Arbitration Association. Said time period shall not be extended unless otherwise agreed by the parties.  If an alternative dispute mechanism is alternatively agreed between the parties, such determination shall be made as promptly as possible making due allowance for all time limits and procedures set forth in this act.

(g) Any contractor, subcontractor or supplier whose interests are affected by the filing of a Notice of Unpaid Balance and Right to File Lien under section 10 of this act shall be permitted to join in said arbitration; but the arbitrator shall not determine the rights or obligations of any such parties except to the extent those rights or obligations are affected by the lien claimant's Notice of Unpaid Balance and Right to File Lien.

(h) Upon determination by the arbitrator that there is an amount which, pursuant to a valid lien, shall attach

4842K/061193

to the improvement, then the lien claimant shall, within ten (10) days of the lien claimant's receipt of the determination, file such lien claim in accordance with the provisions of Section 8 of this act and furnish any bond, letter of credit or funds required by the arbitrator's decision. The failure to file such a lien claim or furnish the bond, letter of credit or funds within the ten (10) day period shall cause any lien claim to be invalid.

(i) Except for the arbitrator's determination itself, any such determination shall not be considered final in any legal action or proceeding, and shall not be used for purposes of collateral estoppel, res judicata, or law of the case to the extent applicable. Any finding of the arbitrator pursuant to the provisions of this act shall not be admissible for any purpose in any other action or proceeding.

(j) If either the lien claimant or the owner is aggrieved by the arbitrator's determination, then either may institute a summary action in the Superior Court, Law Division, for the vacation, modification or correction of the arbitrator's determination. The arbitrator's determination shall be confirmed unless it is vacated, modified or corrected by the court. The court shall render its decision after giving due regard to the

-7-

4842K/061193

time limits and procedures set forth in this act.

(k) In the event a Notice of Unpaid Balance and Right to
File Lien is filed and the owner conveys its interest
in real property to another person before a lien claim
is filed, then prior to or at the time of such
conveyance, the owner shall place in escrow an amount
no less than the amount set forth in the Notice of
Unpaid Balance and Right to File Lien.  After the
issuance of the arbitrator's determination set forth
in subsections (d) and (e), any amount in excess of
that determined by the arbitrator to be the amount of
a valid lien claim shall be returned forthwith to the
owner who has made the escrow deposit.  The balance
shall remain in escrow until the lien claim has been
paid, satisfied or settled by the parties, forfeited
by the claimant, invalidated pursuant to section 22(h)
or discharged under section 34 of this act.  For
purposes of this provision, the phrase "place in
escrow" shall mean a deposit in the trust account of a
title insurance company licensed to do business in the
State of New Jersey, an escrow account with attorney
at law of the State of New Jersey, or as a deposit
with the Clerk of the Superior Court.  Upon creation
of an escrow as above described, notice thereof shall
be given in writing to the lien claimant within five

-8-

4842K/061193

days of the creation of the escrow account.

(l) Solely for those lien claims arising from a residential construction contract, if a Notice of Unpaid Balance and Right to File Lien is without basis, the amount of the Notice of Unpaid Balance or Right to File Lien is significantly overstated, or the Notice of Unpaid Balance and Right to File Lien is not filed in substantially the form or in the manner or at a time not in accordance with the provisions of this act, then the claimant shall be liable for all damages suffered by the owner or any other parties adversely affected by the Notice of Unpaid and Right to File Lien including all court costs, reasonable attorneys fees and legal expenses incurred.

(m) In the event the aggregate sum of all lien claims attaching to any property that is the subject of a residential construction contract exceeds the amount due under a residential purchase agreement, less the amount due any previously recorded mortgage, then upon entry of judgment of all such lien claims, each lien claim shall be reduced pro rata.  Each lien claimant's share then due shall be equal to the monetary amount of the lien claim multiplied by a fraction in which the denominator is the total monetary amount of all valid lien claims on the owner's interest in real

-9-

4842K/061193

property against which judgment has been entered and the numerator is the amount of each particular lien claim for which judgment has been entered.  The amount due under the residential purchase agreement shall be the net proceeds of the amount paid less previously recorded mortgages and any required recording fees.

Insert as Section 19 (modified per agreement from old draft).

In the event a lien attaches to an interest in real property, the lien claimant shall release a proportionate share of the interest in real property from the lien upon receipt of payment for that proportionate share.  This proportionate share shall be calculated in the following manner:

(a) If there is a contract between the lien claimant and the owner which provides for an allocation by lot or tract, that allocation of the proportionate share shall be binding upon the lien claimant.

(b) If the work performed by the lien claimant was for a condominium in which a master deed is filed before the lien attaches, or for work performed for a cooperative in which a master declaration is filed before the lien attaches, then the proportionate share shall be allocated in an amount equal to the percentage of common elements attributable to each unit.

(c) If subsections (a) or (b) do not apply, then the

-10-

4842K/061193

lien shall not be released as to any portion of the interest in real property unless the lien claimant and the owner otherwise agree in a writing signed by both parties.

(d) In the event a lien claimant receives payment of its proportionate share but refuses to discharge its lien claim, then upon application to a court having jurisdiction thereof, the court shall order the discharge of the lien claim to the extent of that proportionate share.   The lien claimant shall be further subject to the provisions of section 31 of this act.

4842K/061193