FOR PUBLICATION                                                          CLOSED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICHAEL J. WRIGHT CONSTRUCTION CO., INC., | : : : | |
| Appellant, | : : | Civil Action No. 07-5027 (JAP) |
| v. | : : | **OPINION** |
| KARA HOMES, INC. and KARA AT HAWKINS RIDGE, LLC, | : : : : | |
| Appellee. | : : | |
| MICHAEL J. WRIGHT CONSTRUCTION CO., INC., | : : : | |
| Appellant, | : : | Civil Action No. 07-5028 (JAP) |
| v. | : : | |
| KARA HOMES, INC. and KARA AT NAVASINK, LLC, | : : : : | |
| Appellee. | : : | |
| MICHAEL J. WRIGHT CONSTRUCTION CO., INC., | : : : | |
| Appellant, | : : | Civil Action No. 07-5030 (JAP) |
| v. | : : | |
| KARA HOMES, INC. and KARA AT GLEN EYRE, LLC, | : : : : | |
| Appellee. | : : | |
| MICHAEL J. WRIGHT CONSTRUCTION CO., INC., | : : : | |

|  |  |  |
|---|---|---|
| Appellant, | : | Civil Action No. 08-3383 (JAP) |
| | : | |
| v. | : | |
| | : | |
| KARA HOMES, INC. and COUNTRY CLUB ESTATES BY KARA, LLC, | : | |
| | : | |
| Appellee. | : | |
| _____ | : | |
| MICHAEL J. WRIGHT CONSTRUCTION CO., INC., | : | |
| | : | |
| Appellant, | : | Civil Action No. 08-3384 (JAP) |
| | : | |
| v. | : | |
| | : | |
| KARA HOMES, INC. and WINDING RUN RUN ESTATES BY KARA, LLC | : | |
| | : | |
| Appellee. | : | |
| _____ | : | |
| MICHAEL J. WRIGHT CONSTRUCTION CO., INC., | : | |
| | : | |
| Appellant, | : | Civil Action No. 08-3386 (JAP) |
| | : | |
| v. | : | |
| | : | |
| KARA HOMES, INC. and HORIZONS AT WOODLAKE GREENS, | : | |
| | : | |
| Appellee. | : | |
| _____ | : | |
| MICHAEL J. WRIGHT CONSTRUCTION CO., INC., | : | |
| | : | |
| Appellant, | : | Civil Action No. 08-3391 (JAP) |
| | : | |
| v. | : | |
| | : | |
| KARA HOMES, INC. and BERGEN MILLS ESTATES, LLC, | : | |
| | : | |
| Appellee. | : | |
| _____ | : | |

PISANO, District Judge.

Pursuant to 28 U.S.C. § 158(a), Appellant Michael Wright Construction Co., Inc. ("Wright") has appealed the United States Bankruptcy Court's September 12, 2007 and April 22, 2008 orders granting Appellees Kara Homes, Inc. and its affiliates' (collectively, "Appellees" or "Kara Homes") motions for summary judgment.[1]  The issue presented in the instant appeal is whether the residential construction contract provisions in the New Jersey Construction Lien Law (the "Lien Law") should govern the subcontractor agreement between Wright and Kara Homes.[2] As explained below, the Court holds that the Bankruptcy Court correctly granted Kara Homes' motions for summary judgment declaring Wright's construction liens to be invalid.  Accordingly, the orders of the Bankruptcy Court are affirmed.

I.      BACKGROUND

On October 6, 2006, Kara Homes, one of the largest residential builders in New Jersey, filed with the Bankruptcy Court a voluntary petition under Title 11, Chapter 11 of the Bankruptcy Code.  Over fifty Kara Homes affiliates filed voluntary petitions under Chapter 11 within the following eight months.

Over the course of its residential building activity, Kara Homes entered into numerous subcontractor agreements with various contractors who provided goods and/or services to construct improvements to the projects owned by each of the affiliated debtors.  Appellant

---

[1]     This is a consolidated appeal in the following adversary proceedings, all of which were commenced on or about January 15, 2007: 07-5027 (Order dated 9/12/2007); 07-5028 (9/12/2007); 07-5030 (9/12/2007); 08-3383 (Order dated 4/22/2008); 08-3384 (4/22/2008); 08-3386 (4/22/2008); and 08-3391 (4/22/2008).

[2]     Appellees urge the Court to find it is precluded from reaching the merits of the appeal on the bases of equitable mootness and *res judicata*.  The Court declines the invitation and decides this appeal on the merits.

Wright, for example, provided framing contracting services to Kara Homes for hundreds of dwelling units pursuant to a subcontracting agreement. Prior to the debtors' filing of their bankruptcy petitions, their creditors filed construction lien claims against individual homes and residential condominium units owned by Kara Homes. Wright filed over forty construction lien claims but did not file any "Notices of Unpaid Balance and Right to File Lien" ("NUBs"). Wright's lien claims against Kara Homes and the affiliated debtors totaled $769,141.67.

On January 15, 2007, Kara Homes filed twenty-three adversary proceedings, seven of which are the subject of this appeal, to determine the extent, validity, and priority of various lien claims asserted by its creditors, including Wright. Wright and the other creditors filed answers to the adversary complaints throughout February, and on May 11, 2007, Kara Homes filed its first motion for summary judgment to void its creditors' purported construction liens, including three lien claims asserted by Wright. Wright opposed the summary judgment motion in July 2007.

In an August 29, 2007 opinion, the Bankruptcy Court held that contracts for large-scale residential construction projects with numerous dwelling units, like the subcontractor agreement for framing services to hundreds of dwelling units between Wright and Kara Homes, constitute "residential construction contracts," and that by failing to file NUBs, Wright and other creditors had failed to perfect their liens. The Bankruptcy Court awarded summary judgment against Wright and other creditors, and declared invalid lien claims against Kara Homes and the affiliated debtors, where the creditors failed to comply with the requirements of the Lien Law, N.J.S.A. § 2A:44A-1 *et seq.*, for creating and perfecting construction liens on residential properties. On this basis, summary judgment was awarded to Kara Homes on September 12,

2007. Wright filed a Notice of Appeal as to those three adversary proceedings[3] on September 21, 2007. No other creditor filed an appeal of the Bankruptcy Court's September 12 Order.

On September 26, 2007, the affiliated debtors' reorganization plan (the "Plan") was confirmed. Wright received a copy of both the disclosure statement and the Plan. Under the terms of the Plan, a variety of liens were re-classified as unsecured or deficiency claims. Specifically, the Confirmation Order stated that, "Any statutory or equitable lien claims asserted by ... Construction Lienholders ...are extinguished and shall be classified for all purposes under the Plan as Deficiency Claims in Class 5." (Confirmation Order ¶ 13.) The Plan also stated that "no preclusion doctrine", based on the Confirmation Order of the Plan, would apply to claims or causes of action against a claim-holder that are not "expressly waived, relinquished, released or compromised" or otherwise settled in the Plan. At no point in time did Wright attempt to stay implementation of the Plan pending resolution of its appeal.

In February 2008, Kara Homes filed motions for summary judgment in the four adversary proceedings against Wright that remained, which Wright opposed in April 2008. The Bankruptcy Court granted Kara Homes' motion without opinion and ordered summary judgment against Wright on April 22, 2008. Wright filed a notice of appeal of the four cases on May 2, 2008. No other creditor filed an appeal of the Bankruptcy Court's April 22 Order.

## II.     JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction over this appeal pursuant to Rule 8001(a) of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 158(a). The issue presented in this appeal is a purely legal one: whether the subcontracting contracts at issue are residential or non-residential

---

[3] Adv. Pro. No. 07-1057 (07-5027); Adv. Pro. No. 07-1069 (07-5030); and Adv. Pro. No. 07-1067 (07-5028).

construction contracts under the Lien Law.  A district court reviews a bankruptcy court's legal conclusions *de novo*.  *See J.P. Fyfe, Inc. of Fla. v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3d Cir. 1989).  Factual determinations, however, may be set aside by the district court only if they are clearly erroneous.  *See* Fed. Rule Bankr. Proc. 8013; *J.P. Fyfe, Inc. of Fla.*, 891 F.2d at 69.  As this Court is reviewing the Bankruptcy Court's interpretation of the Lien Law, this Court reviews the issue *de novo*.

### III.    DISCUSSION

Before the Court is the question of whether the Bankruptcy Court correctly interpreted the Lien Law and its provisions addressing residential construction contracts as governing the subcontractor agreement between Wright and Kara Homes.  Pursuant to 11 U.S.C. § 362(a)(4), a creditor such as Wright may not perfect liens after the date of the debtor's voluntary petition for bankruptcy, and therefore, if this Court affirms the Bankruptcy Court's orders, Wright will be precluded from belatedly pursuing the Lien Law's lien-filing processes for residential construction contracts.

When interpreting statutes, a court's primary goal is to give effect to the intention of the legislature, and the plain meaning of the provisions should therefore be afforded primacy.  *See Pizullo v. New Jersey Mfrs. Ins. Co.*, 196 N.J. 251, 263-64 (2008) ("In any matter requiring our consideration of a statute, our essential task is to understand and give effect to the intent of the Legislature.  In doing so, we look first to the plain language of the statute") (internal citations omitted).  If the meaning of the statute is unambiguous, then courts need not dig deeper.  *Id.* at 264.  However, "[u]nder New Jersey law, a court may consider public policy considerations if there is ambiguity in the statutory language that leads to more than one plausible interpretation, or if a plain reading of the statute leads to an absurd result or if the overall statutory scheme is at

odds with the plain language." *Knoepfler v. Guardian Life Ins. Co. Of America*, 438 F.3d 287, 294 (3d Cir. 2006) (internal quotations and citations omitted).  Therefore, if consideration of the public policy undergirding the statutory scheme counsels against a literal interpretation of the statutory text, courts may consult these policies even where the text is unambiguous.  *Id.*

In the specific case of the Lien Law, the New Jersey Supreme Court has directed it to be interpreted "sensibly and with an understanding of the policies underlying the Lien Law." *Craft v. Stevenson Lumber Yard, Inc.*, 179 N.J. 56, 68 (2004) (internal quotations omitted).  The New Jersey Supreme Court identified the two primary policy goals underlying the Lien Law: first, "to help secure payment to contractors, subcontractors, and suppliers who provide work, services, material, or equipment pursuant to a written contract"; and second, "to ensure the rights of property owners who have met their financial obligations and to preclude imposing upon them the burden of double payment for work and materials."  *Id.* The Lien Law defines a residential construction contract as follows:

> any written contract for the construction or improvement to a one- or two-family dwelling, or any portion of a dwelling, which shall include any residential unit in a condominium ... any residential unit in a housing cooperative, any residential unit contained in a fee simple townhouse development, any residential unit contained in a horizontal property regime ...and any residential unit contained in a planned unit development ....

N.J.S.A. § 2A:44-2. Under the Lien Law, parties seeking to place a lien on residential real estate must fulfill certain conditions prior to filing a lien claim, namely (1) the filing of a "Notice of Unpaid Balance Right to File Lien" (a "NUB") and (2) the simultaneously serving of an arbitration demand upon the debtor.  *See* N.J.S.A. § 2A:44A-21(b).  The arbitration must be completed within thirty days of receipt of the demand and, if successful, the creditor must file the lien within ten days of the arbitrator's decision.  N.J.S.A. § 2A:44A-21(b).  In contrast, liens filed

by creditors under a non-residential construction contract attach at the time of filing, and do not have any prerequisites.  See N.J.S.A. § 2A:44-10.  Therefore, any lien claim arising from a residential construction contract will fail if the creditor does not comply with the specific procedures outlined in the Lien Law.  See N.J.S.A. § 2A:44A-15 (providing that any lien claims not filed in conformity with the Lien Law shall be forfeited).

     Both parties contend the Lien Law is unambiguous as drafted, but reach different conclusions as to what the unambiguous language requires.  Wright argues that the agreement at issue constitutes a *non-residential* construction contract because the Lien Law's literal definition of residential construction contract does not speak to contracts dealing with numerous residential units.  Wright supports its position by noting that the Lien Law's definition of residential construction contracts "unambiguously" states that "a 'residential construction contract' is a contract for the construction or improvement of 'a' dwelling, not numerous dwellings" and accordingly, "[t]he contract between [Kara Homes] and [Wright] cannot be a residential contract if the plain language of the statute is read literally."  (Appellant's Br. 20.)  Wright also suggests that the arbitration provisions of the Lien Law applicable to residential construction contracts become unworkable if applied to large-scale residential construction projects.

     In contrast, Kara Homes argues that "[f]undamental to the [] Lien Law is that it distinguishes between two types of construction and two types only: residential and *everything else*."  (Appellees Br. 13 (emphasis in original).)  It follows, the argument goes, that a reasonable person reading the Lien Law would understand the residential construction contract provisions to apply to construction contracts for residential projects based, in part, on the Lien Law's inclusion of "condominiums, housing cooperatives, townhouse developments, horizontal property regimes, and planned unit developments ... since all of these ... always include more than one unit or

dwelling." (Appellees Br. 13.)

This Court agrees with the Bankruptcy Court that because there are two plausible interpretations of the Lien Law residential construction contract provisions, the statute is ambiguous and an inquiry into the legislative intent behind the statute is both appropriate and necessary. A literal read of the statute suggests two interpretations: (1) the residential construction contract provisions apply to contracts for construction of or improvement to *only* single residential units; or (2) the residential construction contract provisions apply to contracts for construction of or improvement to one- or two-family dwellings and multiple residential units. The *Craft* decision instructs that the Lien Law is designed to protect all participants in the housing market and to balance the protections afforded to contractors and to property owners. More specifically, the Lien Law states,

> The Legislature finds that the ability to sell and purchase residential housing is essential for the preservation and enhancement of the economy of the State ... and ... the ability to have a stable marketplace in which families can acquire homes without undue delay and uncertainty ... requires that certain statutory provisions *as related to the lien benefits accorded to contractors, subcontractors and suppliers* be modified.

N.J.S.A. § 2A:44A-21(a) (emphasis supplied). The Legislature's intent, therefore, is to afford the ultimate residential consumer greater protection at the expense of abrogating "the lien benefits accorded to contractors, subcontractors or suppliers." The legislature makes no suggestion that the availability or extent of the protection should depend on whether the consumer lives in a single-family home or a unit within a larger complex.

Wright's suggested interpretation fails to serve the legislature's intent to facilitate the expedient transfer of title to real estate without excessive encumbrances. *See* N.J.S.A. § 2A:44A-21(a) ("the multiplicity of lien claims and potential for minor monetary disputes poses a

serious impediment to the ability to transfer title to real estate expeditiously."). This goal is served by requiring NUBs and arbitration for the adjudication of disputes. Those purposes are not frustrated by requiring arbitration as a means of dispute resolution because, as Appellees point out, an arbitrator could simply consolidate the claims and adjudicate the lien claims within the thirty-day window. Wright also argues that the "legislative intent expressly articulated in [the Lien Law] is to address 'minor monetary disputes.'" The fact that residential construction disputes can involve large sums of money does not vitiate the overarching legislative concern with protecting the residential consumer from unwarranted encumbrances. The legislative findings contained in the Lien Law demonstrate an intent to eliminate the *potential* of minor monetary disputes from impeding the ability to transfer title. It nowhere suggests that disputes related to residential construction contracts are always or even usually of minor monetary significance – rather, it acknowledges the reality that residential construction can entail smaller sums of money which could tarnish otherwise marketable title.

  Finally, the canon of statutory interpretation that a statute should be read so as to give effect to all provisions contained within it is relevant to the present inquiry. *See Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 204 (N.J. 1999). This Court agrees with the Bankruptcy Court that to adopt the position advocated by Wright, i.e. that the residential construction contract lien claim filing process does not apply to larger-scale residential developments, would render Section 18 of the Lien Law superfluous. Section 18 "solely appl[ies] to work, services, material or equipment furnished under a residential construction contract," and provides for the release of liens on proportionate shares of the residential property upon payment for that proportionate share. N.J.S.A. § 2A:44A-18. Section 18 directs that in the case of condominiums or cooperatives, in which the master deed or declaration, respectively, is

filed before the lien attaches, "then the proportionate share shall be allocated in an amount equal to the percentage of common elements attributable to each unit." *Id.* The references to condominiums and cooperatives in this section demonstrate the Legislature's intent to include construction contracts for multiple-unit dwellings as part of the broader "residential construction contracts" definition. To read Section 18 in isolation and without reference to the larger legislative scheme would be against the direct mandate of the New Jersey Supreme Court. *See Craft*, 179 N.J. at 68.

Although not considered in the instant appeal, the Court notes that this interpretation is consistent with proposed amendments to the Lien Law drafted by the New Jersey Law Revision Commission.[4] *See* N.J. Law Revision Comm'n, Draft Tentative Report Relating to Constr. Lien Law, at 9 (Sept. 2008).

### IV. CONCLUSION

For the forgoing reasons, the Bankruptcy Court's September 12, 2007 and April 22, 2008 orders awarding summary judgment to Appellees are affirmed. An appropriate order accompanies this opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: September 25, 2008

---

[4] The Commission was created by the New Jersey State Legislature to simplify, clarify, and modernize New Jersey statutes pursuant to an on-going review of the state's statutes. *See* N.J.S.A. § 1:12A-1 *et seq*.